UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SANDRO ANDY, S.A.,                                  :
                                                    :
                          Plaintiff,                :
                                                    :           OPINION & ORDER
           -against-                                :
                                                    :           12 Civ. 2392 (HB)
LIGHT INC. and ALICE SIM,                           :
                                                    :
                          Defendants.               :
------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

  This dispute concerns the use of the trademark SANDRO. Plaintiff and counter-defendant Sandro Andy, S.A., ("Sandro Andy") moves to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure the fifth counterclaim by defendant and counter-claimant Light, Inc., ("Light"). By its fifth counterclaim, Light seeks a declaration that Sandro Andy "lacked a bona fide intent to use the mark in connection with the goods listed in the application" and an order directing the United States Patent and Trademark Office ("USPTO") to cancel Sandro Andy's registration. Answer and First Amended Counterclaims ¶¶ 148–54.

## Background

  Sandro Andy is a thirty-year-old French company that designs, manufactures, and sells clothing and accessories under the SANDRO trademark in twenty countries throughout Europe, Asia, the Middle East, and North America. The SANDRO trademark, initially registered in France, is registered on the Principal Register of the USPTO and was issued February 23, 2010, pursuant to Section 66(a) of the Lanham Act, 15 U.S.C. § 1141f, which allows for International Registrations to be extended to the United States. The Sandro Registration identifies over 250 items, and it establishes a constructive use date of May 22, 2008, about nine years after Light began using its SANDRO mark. Sandro Andy opened its first store in the United States in New York City on September 7, 2011. Shorty thereafter, Sandro Andy started a U.S. Twitter account under the name "@sandronewyork" and the website www.sandro-paris.com. Since 1993, Light has designed, manufactured, and sold apparel to a range of nationwide retailers. Starting in 1999, Light developed and commenced use of its SANDRO mark in connection with the apparel. Alice Sim is the current owner of Light. On approximately March 12, 2012, Light launched the website

1

www.sandronyc.com. Light also utilizes a Twitter account (@Sandro_ny), a blog (Sandronewyork.blogspot.com), and a Facebook page to promote sales.

## Discussion

In connection with its fifth counterclaim, Light must have provided "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in the non-movant's favor. *Roth v. Jennings*, 489 F.3d 499, 504 (2d Cir. 2007). "A complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable theory." *Twombly*, 550 U.S. at 562.

**I.      Section 66 – The Madrid Protocol**

A party may apply for a U.S. registration under Lanham Act §§ 1 or 44, or a party may request an extension of protection to the United States of an International Registration issued by the World Intellectual Property Organization under § 66 (the Madrid Protocol). *See* 15 U.S.C. §§ 1051, 1126, 1141f. Section 1(a) applications are based on the actual use of the mark, whereas § 1(b) applications are based on the intent to use the mark in commerce. A mark must still be used in commerce for a § 1(b) application to give rise to a valid registration. Where an applicant has recently applied for a foreign registration, that applicant may also apply for a U.S. registration under § 44(d), which simply allows for the benefit of the earlier foreign filing date—a § 44(d) applicant must still state a basis for registration under another provision. A § 44(e) application must be based on an existing trademark registration in a foreign country, and the applicant must declare a bona fide intent to use the mark in commerce. Finally, a request for an extension of protection under § 66(a) allows a holder of an International Registration to extend protection to the United States; the requester must include "a declaration of bona fide intention to use the mark in commerce." 15 U.S.C. § 1141f(a). A registration based on § 44(e) is independent of the foreign registration, but a registration based on § 66(a) depends on the scope and validity of the International Registration. And unlike § 1(a) and (b) applications, an applicant under §§ 44(e) or 66(a) does not need to actually use the mark in commerce in the United States prior to obtaining a domestic registration.[1] Importantly, a U.S. registration that was issued based on

---

[1] *But see* 15 U.S.C. § 1141k (setting forth requirements for timely affidavit of use or justifiable non-use).

§ 66(a) "is subject to the same grounds for cancellation as those registrations issued under Section 1 or Section 44(e)." *Saddlesprings, Inc. v. Mad Croc Brands, Inc.*, 2012 TTAB LEXIS 378, at *9 (T.T.A.B. Sept. 25, 2012) (denying a motion to dismiss a petition to cancel a registration based on § 66(a) due to abandonment); *see also* 15 U.S.C. § 1141i(b) ("[S]uch extension of protection shall have the same effect and validity as a registration on the Principal Register [and] the holder of the international registration shall have the same rights and remedies as the owner of a registration on the Principal Register."). The U.S. registration may be subject to cancellation "even if the international registration remains valid and subsisting." *Saddlesprings, Inc.*, 2012 TTAB LEXIS 378, at *12.

## II.     The Fifth Counterclaim is a Petition to Cancel

The Lanham Act grants federal courts concurrent jurisdiction with the Patent and Trademark Office to conduct cancellation proceedings. *See* 15 U.S.C. § 1119 ("In any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action."); *see also Horizon Mills, Corp. v. QVC, Inc.*, 161 F. Supp. 2d 208, 214 (S.D.N.Y. 2001) ("While formal cancellation proceedings are generally held before the PTO, under 15 U.S.C. § 1119, this Court may also direct the PTO to cancel a mark."); *Gear, Inc. v. L.A. Gear Calif., Inc.*, 670 F. Supp. 508, 512 (S.D.N.Y. 1987) ("[T]he Lanham Act empowers the court to order cancellation of registrations in any civil action in which the validity of the mark is placed in issue."). The Lanham Act allows for cancellation of a Principal Register registration by anyone "who believes that he is or will be damaged . . . by the registration." 15 U.S.C. § 1064; *accord Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000) ("The party seeking cancellation must prove two elements: (1) that it has standing; and (2) that there are valid grounds for canceling the registration.").

A defendant may petition to cancel the registration in a counterclaim. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 7, 13–14 (2d Cir. 1976) (Friendly, J.); 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION ("MCCARTHY") § 34:5 (4th ed.) ("The validity of the mark and its registration may be collaterally attacked by a defendant charged with infringement: . . . Defendant can counterclaim for cancellation of a registration improperly granted by the [USPTO]."); *see also Chere Amie, Inc. v. Windstar Apparel, Corp.*, 01 CIV. 0040

(WHP), 2002 WL 31108187 (S.D.N.Y. Sept. 23, 2002) (finding that a trademark was void and should be canceled because it failed to meet the "use in commerce" requirement of registration). The Court may order the cancellation of all or only part of a registration. *See, e.g.*, *Levi Strauss & Co. v. GTFM, Inc.*, 196 F. Supp. 2d, 971, 976–77 (N.D. Cal. 2004) (ordering partial cancellation where the use of the mark with respect to some of the listed goods had been abandoned). Finally, "[a]s in cancellation proceedings in the Patent and Trademark Office, a litigant in court who prays for cancellation has the burden of overcoming the evidentiary effect of a federal registration." 5 MCCARTHY § 30:109 (4th ed.).

Sandro Andy states that a "party may petition to cancel a trademark registration on the grounds that the registration was obtained fraudulently", Pl.'s Supp. 7, and then argues that the fifth counterclaim does not meet the pleading requirements for a fraud claim. Sando Andy has constructed the proverbial straw man. Light claims only that Sandro Andy lacked a bona fide intent to use the registered mark on all the goods and services listed in the registration, a statutory requirement for a valid trademark extension under § 66(a). Defs.' Opp'n 5; *cf. Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 21 (D.C. Cir. 2008).

### III.    Light States a Claim

There are no decisions that I can find that address a petition to cancel a Madrid Protocol registration on the ground of a lack of bona fide intent. Sandro Andy makes much of the fact that the claim here is brought as a petition to cancel, rather than as an opposition to an application, but that distinction is unavailing where, as under a § 66(a) request for an extension, actual use in commerce is not required before the USPTO can grant a registration. With an existing International Registration, a requester can obtain a U.S. registration simply with a request for an extension that includes a declaration of a bona fide intent to use the mark in commerce. A party with standing can oppose the request for extension under § 68, 15 U.S.C. § 1141h, or they can petition to cancel the registration under § 69, 15 U.S.C. § 1141i. There can be a period of time during which a holder of a registration based on § 66(a) has not actually used the mark in commerce but still asserts a bona fide intention to do so. It is in this liminal state that a petition to cancel a registration on the ground of a lack of bona fide intent to use the mark can be heard. It makes no difference that Sandro Andy has progressed from the initial request for an extension to the actual grant of the registration. What matters is whether Sandro Andy used the mark and then abandoned it, or, as here, where Sandro Andy allegedly never intended to use it in the first place.

*Cf. Rivard v. Linville*, 133 F.3d 1446, 1448–49 (Fed. Cir. 1998) ("Trademark law provides for canceling a registration '[a]t any time if the registered mark . . . has been abandoned,' 15 U.S.C. § 1064(3), and defines abandonment as discontinued use with an intent not to resume, *see id.* § 1127. Where a registrant has never used the mark in the United States because the registration issued on the basis of a foreign counterpart registration, *see id.* § 1126(e), cancellation is proper if a lack of intent to commence use in the United States accompanies the nonuse."); *L'Oreal S.A. v. Marcon*, 102 U.S.P.Q.2d 1434, 1444 n.12 ("While [§ 44(e)] applicants are excused from the requirement in [§ 1] that the mark be in use prior to registration, they must nonetheless state that they have (and must in fact possess) a bona fide intent to use the mark in United States commerce.").

      Sandro Andy also argues that the required declaration under § 66(a)—a "bona fide intention to use the mark in commerce"—does not require the requester to declare an intent to use that is specific to particular goods, only the mark itself. This, in Sando Andy's view, means a § 66(a) registration does not anticipate or allow for a petition to cancel based on an alleged lack of bona fide intent to use the mark in connection with particular goods or services. This may explain Sandro Andy's focus on fraud as a basis for the petition. In any event, the Madrid Protocol provides numerous opportunities to reduce overbroad registrations. *See* 15 U.S.C. § 1141j(a) ("If the International Bureau notifies the [USPTO] of the cancellation of an international registration with respect to some or all of the goods and services listed in the international registration, the Director shall cancel any extension of protection to the United States with respect to such goods and services . . . ."); *id.* § 1141k(b) (requiring an affidavit of use that shall: "set forth the goods and services recited in the extension of protection on or in connection with which the mark is in use in commerce"; "set forth the goods and services recited in the extension of protection on or in connection with which the mark is not in use in commerce"; or "include a showing that any nonuse is due to special circumstances which excuse such nonuse and is not due to any intention to abandon the mark"); *see also* 37 C.F.R. § 2.33(e) (requiring a verified statement for a § 66(a) request for extension that alleges "a bona fide intention to use the mark in commerce . . . on or in connection with the goods/services identified in the international application/subsequent designation"). A petition to cancel should be no different.

5

A petition to cancel an extension of an International Registration based on an alleged lack of a bona fide intent to use the mark in commerce for some or all of the listed goods is a valid claim where it is supported by adequately alleged facts.

## IV.     The Registration is Overbroad

The registration here lists over 250 goods in several International Classes. Sandro Andy concedes that it uses the mark in connection with Class 25, apparel, only. It is unclear at this stage whether there are items within Class 25 that Sandro Andy does not intend to market. At oral argument, Sandro Andy indicated it was willing to delete from its International Registration all unused classes. The other option, of course, is for the Court to direct the USPTO to delete the classes, at which point the USPTO would notify the International Bureau. Given the unnecessary steps involved in the latter option, Sandro Andy is directed to amend its International Registration and delete those goods and classes they will not use. This leaves for a later motion, and after discovery, an opportunity for the parties to present the Court with evidence of Sandro Andy's bona fide intent to use the mark for the remaining goods.

However, this simple and seemingly elegant solution is not what Light truly desires. Light argues that the *entire* registration should be deemed void ab initio on the ground that Sandro Andy did not possess a bona fide intent to use in commerce *each and every* good listed on the International Registration. *See* Oral Arg. Tr. 11–13. Otherwise, Light continues, Sandro Andy is in effect extended rights in gross—a monopoly over the use of the SANDRO mark. *See id.* at 9–10. Yes, on the one hand Sandro Andy was expected to declare a bona fide intent to use the mark in connection with all of the goods listed on its request for extension. But on the other hand, absent fraud or some other such infirmity that infects the process, a lack of bona fide intent for some but not all of the goods is not necessarily a reason to deem the entire registration void ab initio. *Cf. The Wet Seal, Inc. v. FD Mgmt., Inc.*, 82 U.S.P.Q.2d 1629, 1633 (T.T.A.B. 2007) ("[C]ontrary to opposer's contention, an application will not be deemed void for lack of a bona fide intention to use absent proof of fraud, or proof of a lack of bona fide intention to use the mark on all of the goods identified in the application, not just some of them."); *Grand Canyon W. Ranch, LLC v. Hualapai Tribe*, 78 U.S.P.Q.2d 1696, 1697 (T.T.A.B. 2006) (deleting some goods from a use-based application for which the mark was not actually used rather than finding the entire application void ab initio).

The USPTO is not required to scrutinize each application or request for extension with such attention to factual matters as would be possible (and preferable) in a contested proceeding, such as an opposition or a petition to cancel. The administrative scheme is not suited and was not intended to provide for such precision and specificity. *See Eastman Kodak Co. v. Bell & Howell Document Mgmt. Prods. Co.*, 994 F.2d 1569, 1575 n.8 (Fed. Cir. 1993) ("It is not unreasonable for the PTO to assume that each application is bona fide until proven otherwise."); *Ralston Purina Co. v. On-Cor Frozen Foods, Inc.*, 746 F.2d 801 (Fed. Cir. 1984) (reversing TTAB decision that an intent-to-use registration was void ab initio because the product ultimately used in commerce was not "identical" to the application and holding that the requirement was to maintain the "inherent and identifiable character" of the product). Sandro Andy was required to make representations to the French trademark office, the International Bureau, and the USPTO in order to obtain the registration at issue. At each step of the way, Sandro Andy faced significant penalties for misleading these offices. And an overbroad application or request for an extension increases the chances that an opposer can prove by a preponderance of the evidence that there was a lack of bona fide intent.

Provided that Sandro Andy navigated the application and extension processes successfully, it is entitled to a presumption of validity. Simply because Light must now come forward and establish a prima facie case to invalidate some or all of the remaining items does not mean that Sandro Andy possessed rights in gross. It means simply that Light has the burden of persuasion; a burden that Light turns on its head when it suggests that an applicant or requester is required to do any more than prepare in good faith a declaration of bona fide intent. *See Collagenex Pharm., Inc. v. Four Star Partners*, 2003 WL 22273118, at *6–7 (T.T.A.B. Sept. 24, 2003). On a later motion, Light may still establish a prima facie case of a lack of bona fide intent as to all the goods, which, if left unchecked by Sandro Andy, could result in the cancellation of the entire registration. *See The Saul Zaentz Co. dba Tolkien Enters. v. Joseph M. Bumb*, 95 U.S.P.Q.2d 1723 (T.T.A.B. 2010) (finding an intent-to-use application void ab initio where applicant failed to produce evidence of a bona fide intent to use the mark in commerce for any of the listed goods); *see also Spirits Int'l, B.V. (formerly Spirits Int'l N.V.) v. S.S. Taris Zeytin Ve Zeytinyagi Tarim Satis Kooperatifleri Birligi*, 99 U.S.P.Q.2d 1545, 1546 (T.T.A.B. 2011) (finding an intent-to-use application void ab initio where opposer established a prima facie case

of a lack of bona fide intent and applicant failed to respond by amending or dividing the registration or by producing evidence).

## Conclusion

Sandro Andy's motion to dismiss Light's fifth counterclaim is DENIED. Sandro Andy is directed to amend its International Registration and to cull from the list the unused goods and classes. In the alternative, Sandro Andy may file a motion to amend its certificate of extension. The Clerk of Court is instructed to close the motion and remove it from my docket.

SO ORDERED.

Date: 12/27/12
New York, New York

HAROLD BAER, JR.
United States District Judge

8